UNITED STATES of America, for Use of Fred SUTTER, d/b/a Sutter Enterprises, and Sutter Enterprises, Inc., a corporation, Plaintiff,

v.

UNITED PACIFIC INSURANCE COMPANY, a corporation, M. J. Brassfield Co., a copartnership consisting of M. J. Brassfield and G. W. Brassfield, and Road-builders, Inc., a corporation, Defendants.

Civ. No. 65-286.

United States District Court
D. Oregon.

Sept. 7, 1966.

David P. Templeton, Dusenberry, Martin, Beatty, Parks & Templeton, Portland, Or., for plaintiff.

David J. Krieger, Black, Kendall, Tremaine, Booth & Higgins, Portland, Or., for defendants.

## OPINION AND FINDINGS

KILKENNY, District Judge:

Plaintiff prosecutes this action against defendants under the Miller Act.[1]

Brassfield Co. and the United States (Bureau of Public Roads) signed a contract[2] for the construction of a road in Douglas County, Oregon, for the contract price of $694,116.00. Brassfield, with United Pacific as surety, executed and delivered to the United States a payment bond, conditioned for prompt payment of persons supplying labor and materials in the performance of the general contract, in the sum of $347,058.00, all in accordance with 40 U.S.C. § 270a. Subsequently,[3] Brassfield entered into a subcontract with Roadbuilders for the completion of certain portions of the work, including "drilling and shooting." The same day, the same parties executed an "Equipment Rental" agreement under which Roadbuilders apparently undertook to perform the general contract work, not covered by the subcontract with Brassfield. The undisputed testimony is that the Government was never informed of the existence of the Equipment Rental agreement. On a later date,[4] Roadbuilders and Sutter signed a "Drilling-Shooting" agreement, under which Sutter agreed to provide labor, materials, powder and equipment necessary to drill and shoot all rock required to construct the road, at places to be designated by Roadbuilders or the engineer for Brassfield. The contract required payment to Sutter of $0.40 per cubic yard of rock, with the shooting of ditches to be done at the same price, provided that the work was done at the same time as shooting for the road, in which case, the parties were to negotiate for payment as the need might arise, but in no event was the price to exceed $30.00 per hour. Later,[5] this agreement was modified, the modification to be effective November 11th. Under the terms of the letter, Sutter was to be paid $26.00 per hour for all drilling on the job and to furnish the services of himself and one extra man with the necessary compressor, drill and steel bits. An extra allowance was made for powder and caps. Sutter urges that at the date of this letter Roadbuilders was heavily indebted to him and that the reduced rate agreement was made in consideration of the Roadbuilders promise to forthwith pay that indebtedness in full.

1. 40 U.S.C. § 270b.

2. June 27, 1963.

3. July 5, 1963.

4. July 6, 1963.

5. December 11, 1963.

Many items of Sutter's original claim, plus interest and attorney fees, are in dispute. There is no dispute as to the following items:

### UNDISPUTED ITEMS

Credits to Sutter

| | |
|---|---|
| Contracted yardage at $0.40 per cubic yard | $ 5,330.40 |
| Powder & materials (8/23/63 to 9/17/64) | $50,206.46 |
| Drilling hours (241) at $30.00 per hour (9/16/63 to 11/10/63) | $ 7,230.00 |

Credits to defendants

| | |
|---|---|
| Payments to Sutter (9/16/63 to date) | $46,329.45 |
| Payments to suppliers & others for Sutter (9/16/63 to date) | $26,400.20 |
| Telephone calls, gas and oil | $ 578.81 |

### DISPUTED ITEMS

Disputed items include the following, adjusted for arithmetical errors in the briefs:

1. Drilling hours, as credits to Sutter
   a. Sutter claims $1266\frac{5}{12}$ hours at $30.00 an hour, or     $37,992.50
   b. Defendants claim $1261\frac{1}{3}$ hours at $26.00 an hour, or     $32,794.67

       $ 5,197.83 difference
   c. Sutter claims $59\frac{1}{6}$ hours at $26.40 an hour, or     $ 1,562.00
   d. Defendants claim $56\frac{1}{4}$ hours at $22.60 an hour, or     $ 1,271.25

       $ 290.75 difference

2. Labor hours, as credits to Sutter
   a. Sutter claims 2057 hours at $4.00 an hour, or     $ 8,228.00
   b. Defendants claim 2052 hours at $4.00 an hour or     $ 8,208.00

       $ 20.00 difference

3. Overtime hours, as credits to Sutter
   a. Sutter claims $564\frac{11}{12}$ hours at $2.00 an hour, or     $ 1,129.83
   b. Defendants claim no such hours are chargeable     . . . . .

       $ 1,129.83 difference
   c. Sutter claims a U. S. Dept. of Labor overtime assessment     $ 323.37
   d. Defendants claim it is not properly chargeable     . . . . .

       $ 323.37 difference

4. Payroll advances to Sutter, as credits to defendants

    a. Defendants claim advances of     $22,888.33

    b. Sutter claims advances of     $19,591.08

    $ 3,297.25 difference

5. Diesel oil used by Sutter, as Credit to defendants

    a. Defendants claim Sutter liable for all oil used, or     $ 2,184.00

    b. Sutter claims liability only for oil used up to 11/30/63, 1770 gallons at $0.13 a gallon, or     $ 230.10

    $ 1,953.90 difference

6. Payroll Taxes as Credits to defendants

    a. Defendants claim Sutter liable for payroll taxes, of     $ 2,861.05

    b. Sutter concedes only partial liability for     $ 1,254.37

    $ 1,606.68 difference

## DRILLING HOURS

Sutter claims that payment for the drilling hours after November 11, 1963, should be at the rate of $30.00 and $26.40 per hour, even though he signed the letter-agreement for the reduced rates. I carefully analyzed the testimony of the witnesses at the time of the trial and weighed that testimony in the light of the language of the letter and I am convinced that payment of the balance owing to Sutter by Roadbuilders was not a "condition" to the agreement. There is a direct conflict in the evidence as to the reason for the letter and as to whether Brassfield did, or did not, approve it. To me, the defendant's testimony that the letter-agreement grew out of the fact that it was close to winter time and that the defendant could handle the matter much cheaper by himself and a skeleton crew is more plausible. This, added to the fact that the plaintiff continued billing the defendants at $26.00, strongly supports the view that the payment of the balance owing to the plaintiff was not a reason for reducing the price. The argument of Sutter that the Brassfield-Roadbuilders arrangements were in violation of the general contract, is of no significance. Nor is it of particular importance whether the letter would actually serve as a valid contract. It certainly would be a good guide to determining what would be a reasonable rate for the work under the then existing circumstances and conditions. On this issue, I accept the defendants' theory and find in their favor.

## LABOR HOURS

The variance between the plaintiff and the defendants' figures seems to be a matter of a different *estimate* of the number of hours to be charged. The plaintiff's statement relies on Sutter's records and these records, as I shall later find, control in the dispute over payroll advances. Defendants only treatment of this issue in its brief is the broad statement that the labor hours are "substantially in agreement." I accept the validity of the plaintiff's records on this issue and I find in favor of the plaintiff on this issue.

## OVERTIME HOURS

The United States Labor Department ordered Sutter to pay $323.37 to various men for overtime during the period between September 14, 1963, and November

30, 1963. The payroll records show that Sutter also experienced 564¹¹⁄₁₂ths hours of overtime after November 30, 1963. These figures do not seem to be in dispute. Roadbuilders contend that the $4.00 per hour billing for labor included any and all overtime that would be incurred and call attention to the fact, among other things, that the billing throughout the job was at $4.00 an hour. It is argued that if there was an understanding for additional payments for overtime, these would necessarily have been included in the billing. The latter contention is urged by the defendants on the basis of testimony that certain agreements had been made which would excuse defendants' payment of overtime. In weighing all of the testimony in the case, I am forced to a finding that Sutter was liable for all overtime under the original agreement, that is until November 30th, about the time when defendants took over. After that time, it is my belief that Roadbuilders should be liable. I believe this amount would figure $1,129.83 in overtime wages, which were paid after November 30, 1963, and for which Roadbuilders would be liable.

## PAYROLL ADVANCES TO SUTTER

The disputes on this issue, with minor exceptions, are grounded on the difference between the records on which Sutter relies [6] and those on which defendants' rely.[7] Defendants argue that Sutter's records show only "billable time" and not "down time." Additionally, they claim that these records are confusing and vague and so inaccurate as to be completely worthless. On the other hand, Sutter argues that the payroll is not reliable since it does not show the names of the men, nor titles, nor designations. It is my belief that the use by the defendants of the certified payrolls as a basis to charge plaintiff for payroll advances is completely wrong. Certainly, it would be inequitable and unjust to counter-charge the plaintiff for any part of the payroll above and beyond that labor for which the plaintiff actually billed the

defendants. All of these billings had to be certified and approved by a person specially designated by the defendants and working under their direction. It was Sutter's records on which Roadbuilders relied during the performance of the work. Since the parties treated these records as reliable and controlling during the time when the facts were most readily available, I can find no sensible reason why they should now be challenged. Sutter concedes that $750.00 was advanced for hours spent on maintenance and repair of the drill and other equipment for which he did not and could not bill. He points to the fact that his secondary drillsmen spent much of their time for defendants in loading and shooting throughout the job and that he had never then billed for it. The record shows that Roadbuilders consistently came out ahead on this exchange of labor. The $750.00 figure, which is not challenged directly by Roadbuilders, works out to approximately 220 hours at $3.40 per hour. I am convinced, and I find, that Sutter's claim of $19,591.08 for payroll advances is proper.

## DIESEL OIL

Again, we have a direct conflict in the testimony on this point. Plaintiff says that there was an agreement that Roadbuilders would have the use of Sutter's vehicles in exchange for diesel oil to be used in the drilling. Plaintiff is supported by the testimony of at least one witness who states that the agreement was in Roadbuilders' best interest. It is my considered judgment that the billing to the plaintiff by the defendants for the approximate cost of the diesel oil used by the plaintiff was an afterthought. I have no doubt that the true arrangement was that defendants would use certain of plaintiff's machinery in lieu of the value of the diesel oil.

## PAYROLL TAXES

Plaintiff concedes liability for $1,254.-37 in payroll taxes for himself and his "second men," in connection with Fed-

6. Invoices, logs, ledgers.

7. Certified payroll.

eral and State Unemployment, F. I. C. A. and Workmens' Compensation taxes. Defendants, using their own payroll-advance figures, place the obligation at $2,861.05. Since Sutter's records control on this point, the defendants' claim would be $2,448.89. (12½% of $19,591.08.)

Plaintiff seriously contends that it was his agreement that he would not have to pay these taxes and this contention has the wholehearted support of a letter dated January 23, 1965.[8] There is no doubt that plaintiff relied on the representation that he would not be liable for the payroll taxes after the letter-agreement in December. Even before the letter, the plaintiff had been taking orders from Ward and worked with men supplied by Roadbuilders. There is no depth or reason to defendants' claim that Sutter should pay these taxes as a "cost of doing business." It is agreed that the $4.00 per hour rate for this work consisted of $3.40 in wages and $0.60 for Sutter's supervision. If Sutter was required to pay these taxes, it would mean that he would receive little, if anything, for the vast amount of time he spent in supervisory work. Plaintiff's testimony that he performed little supervision after the date of the letter-agreement is not controlling. His statement on that subject must be read in the light of the other evidence. The "supervision" here referred to is that which was inherent in Sutter's performance as head of the drilling operation for which Roadbuilders was supplying the men. Manifestly, Ward did not devote full time to acting as foreman over this operation, nor does his work alter the fact that Sutter was the immediate supervisor or the further fact that Sutter was available for supervisory duties. On first impression, it would seem inconsistent to say that plaintiff was not liable for the payroll taxes here asserted, either before or after the letter-agreement went into effect and also

hold, in accordance with my previous finding, that he is liable for the overtime for the period preceding the letter-agreement. If, of course, the $4.00 per hour rate was meant to include overtime, an inference would arise that plaintiff also agreed to cover the payroll taxes for these men. A number of defendants' representatives made reference to "adjustments" that would have to be made, even suggesting that the overtime obligation, under the letter-agreement, was Roadbuilders. As to the payroll taxes, however, we have no indication of any change in the arrangements. My problem is whether plaintiff did, or did not, agree from the beginning to pay these taxes out of the $4.00 per hour, which he received from defendants for the non-drilling labor. By inference, my holding that plaintiff originally contracted to pay the overtime, fully supports the inference that he probably did not agree to pay payroll taxes as well. It is my finding that plaintiff did not agree to pay the payroll taxes on the non-drilling labor and that his liability, as he concedes, is $1,254.37.

## ATTORNEY FEES

I have consistently followed United States ex rel. Eoff Electric Co. v. Mann, 196 F.Supp. 185 (D.Or.1961), in refusing to allow attorney fees on insurance contracts which became effective prior to the date of Judge East's opinion in United States for Use and Benefit of Western Steel Co. v. Travelers Indemnity Co., 37 F.R.D. 322 (D.Or.1965). The Ninth Circuit opinion affirming Judge East's decision in *Travelers* did not reach the question. There, the Court held that a special contract between the parties provided for attorney fees and that an allowance could and should be made under that specific provision. In a way, it would be an impairment of the obligation of the insurance contract to permit an allowance on a policy which was issued prior to

8. "Actually we so controlled his [plaintiff's] operations that for all practical purposes we took his operation over. We have told Mr. Sutter for many months that Road-

builders could not legally charge him payroll charges [12½%] in question." (Exhibit 37.)

the decision in *Travelers*. Defendant, United Pacific, had a right to, and no doubt did, rely on the earlier decisions of this Court holding that attorney fees were not allowable. Those decisions, in my opinion, were read into and became part of the insurance contract.

## INTEREST

Plaintiff's claim to interest on an average monthly balance of $11,905.00 at the rate of 6% per annum from December 11, 1963, to September 17, 1964, amounting to $535.72 is reasonable and will be allowed.

## CONCLUSION

I find the following credits are due to the plaintiff:

| | | |
|---|---|---:|
| a. | Contracted yardage at $0.40 per cubic yard | $ 5,330.40 |
| b. | Powder and materials (8/23/63 to 9/17/64) | $ 50,206.46 |
| c. | Drilling hours (241) at $30.00 per hour (9/16/63 to 11/10/63) | $ 7,230.00 |
| d. | Drilling hours (1266$\frac{5}{12}$) at $26.00 per hour | $ 32,926.83 |
| e. | Drilling hours (59$\frac{1}{6}$) at $22.60 per hour | $ 1,337.17 |
| f. | Labor hours at $4.00 per hour | $ 8,228.00 |
| g. | Overtime hours | $ 1,129.83 |
| | | $106,388.69 |

As an offset to said credits, I find the following sums due to the defendants:

| | | |
|---|---|---:|
| a. | Payments to Sutter (9/16/63 to date) | $ 46,329.45 |
| b. | Payments to suppliers & others for Sutter (9/16/63 to date) | $ 26,400.20 |
| c. | Telephone calls, gas and oil | $ 578.81 |
| d. | Payroll advances to Sutter | $ 19,591.08 |
| e. | Diesel oil used by Sutter | $ 230.10 |
| f. | Payroll taxes | $ 1,254.37 |
| | | $ 94,384.01 |

## RECAPITULATION

| | |
|---|---:|
| Total credits to plaintiff | $106,388.69 |
| Interest on monthly balance | $ 535.72 |
| Total | $106,924.41 |
| Less Total due to Defendants | $ 94,384.01 |
| Balance owing to Sutter | $ 12,540.40 |

---

It is my finding and conclusion that plaintiff is entitled to judgment against defendants for the sum of $12,540.40, together with interest thereon at the rate of 6% per annum from September 17, 1964, until paid, and for the costs and disbursements herein.

This opinion shall serve as my findings and a judgment shall be entered hereon.